## COMMISSIONER OF INTERNAL REVENUE v. MOTCH et ux.

### No. 10953.

United States Court of Appeals
Sixth Circuit.

March 20, 1950.

860

Argued by, George D. Webster, Washington, D. C., Theron L. Caudle, Ellis N. Slack, Robert N. Anderson, and George D. Webster, Washington, D. C., on brief, for petitioner.

Argued by, William A. Polster, Cleveland, Ohio, David A. Gaskill, Cleveland, Ohio, William A. Polster, Cleveland, Ohio, on brief, for respondents.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The respondent Edwin R. Motch, Jr., a graduate engineer who in 1941 was secretary and general manager of a large machine tool distributing company in Cleveland, Ohio, came to Washington in January of 1942 at the request of the Ordinance Department of the United States Army to assist in the efficient distribution of machine tools in aid of the conduct of the war. At first, he served in a civilian capacity and received no compensation from the government. On April 22, 1942, he was commissioned Major in the Ordnance Department of the Army; and in July of that year was assigned to duty as Ordnance Officer of the Army and Navy Munitions Board, in which capacity he had to keep in contact with the manufacturers of production equipment, as well as with various government agencies and representatives of foreign countries interested in acquiring war equipment.

In November of 1942, respondent was promoted to the rank of Lieutenant Colonel. For a short time his principal office was in Washington, and thereafter in the nearby Pentagon Building in Arlington, Virginia. There were six other offices in different parts of Washington which he was required to visit daily, and sometimes on short notice he had to attend meetings in Washington and its immediate environs. These gatherings were likely to be called at any time of the day or night.

The tax court found that, to do his work efficiently, the respondent needed an automobile at his own disposal. In December, 1941, he had personally purchased a 1942 Lincoln automobile for $2,544.00. At least eighty percent of his use of this car was in connection with his official duties which, according to the tax court, he could not have performed "efficiently by the use of any transportation provided by the United States Government."

In his income tax returns for 1942 and 1943, respondent claimed deductions as ordinary and necessary expenses in the operation of his automobile the respective amounts of $1,520.06 and $1,447.06, whereof $540 for each year was claimed as depreciation, and $394 for each year as cost of garage and parking. The remainder of the claimed deductions was for repairs and service, insurance and gas and oil. The Commissioner disallowed $904.01 of the deductions claimed for 1942 and the entire deduction claimed for 1943 as expenses of operating the automobile.

Likewise, the Commissioner disallowed $600 of the deductions claimed by respondent for entertainment and travel expenses for 1942 and the entire amount claimed by him as such deductions for 1943. On review, the tax court found that the respondent entertained manufacturers, and also representatives of the British government with whom he had to keep in close contact in order to carry on his work. These entertainment expenses were incurred principally at two private clubs, to which respondent took those gentlemen to lunch "so that their conferences might be uninterrupted and because of the difficulty at that time of obtaining suitable luncheon arrangements elsewhere."

The tax court found further that the respondent, as a part of his duties, was required "to travel to cities away from Washington, and in connection with those trips he had expenses in excess of the amount allowed him by the army and for which he was never reimbursed." The Commissioner was reversed by the tax court in the disallowance of both the deductions claimed by the respondent for the operation of his automobile and the deductions claimed by him as entertainment expenses.

But the tax tribunal upheld the disallowance by the Commissioner of a claimed deduction of $1,000 for the cost of a blue dress military uniform, in which it was "diplomatic" for respondent to attend social functions "in order to be on friendly relations with manufacturers and representatives of foreign governments with whom he was dealing." Later, the army banned the use of blue dress uniforms for the duration of the war, so his fancy uniform became useless.

In its opinion, the tax court points out that the Commissioner "apparently allowed that part of the automobile and entertainment expenses allocable to the portion of 1942 when the petitioner was serving the government in a civilian capacity"; and asserts that the Commissioner has advanced no sound reason why the automobile and entertainment expenses of a civilian performing duties for the government would be deductible, while those of an army officer performing like duties would not.

We are unable to accept as correct the assumption of the Commissioner and the tax court that the deductions were properly allowable to respondent under section 23(a)(1)(A) while he was working in the employ of the government as a civilian; but that question is not before us on the Commissioner's petition for review.

■ The issue here is whether an army officer performing the services which respondent did is entitled to his claimed deductions for expenses allowable to persons "carrying on any trade or business" as contemplated by the statute in controversy, which provides that in computing net income there shall be allowed as deductions: "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * * *Depreciation*. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—(1) of property used in the trade or business, * * * *." U.S.C.A., Title 26, section 23.

We do not read the quoted section of the Internal Revenue Code as applicable to officers, agents or employees of the United States in relation to work performed in their official capacities. A person, to come within its terms, must be engaged in private enterprise. An army officer, though transacting commercial business in behalf of the government, is not, in our view, carrying on a trade or business within the scope of the statute. Consequently, he, like other government officers and employees, is limited in his personal expenditures chargeable to the government, or taxwise deductible, to the usual stipends fixed under appropriate regulations adopted in pursuance of Acts of Congress for his subsistence and travel expenses.

■ However, if section 23(a)(1)(A) were deemed applicable to an army officer performing the services which respondent did, we think a true interpretation of the statute would not permit his claimed deductions for the operation and depreciation of his personally owned automobile, or for his entertainment and travel expenses above the *per diem* allowance for the latter. His claimed deductions were for neither ordinary nor necessary expenses. See Deputy v. DuPont, 308 U.S. 488, 495, 60 S.Ct. 363, 84 L.Ed. 416.

Certainly it is not the ordinary practice for army officers and other government officials to supply and use their own vehicles of transportation except on the basis of fixed mileage allowances. Nor would it seem that, though convenient, it was necessary for the respondent to use his own Lincoln automobile in going about his duties at Washington. Although some loss of time would be occasioned, in dependence upon them, there were motor pools and buses supplied by the government for use of its numerous army officers stationed at Washington. The mere fact that his superior officers approved the use by him of his own

862

car does not strengthen respondent's case. His superiors were limited to lawful authority. Respondent merely made voluntary expenditures for greater convenience and dispatch in performing his official duties and for his personal comfort—not at too great financial sacrifice, however, for he continued to receive a handsome salary from the company of which he was president during his entire army service, and received from the United States the customary compensation allowed officers of his rank, first as a Major and then as a Lieutenant Colonel in the Army.

We fail to see any force in the argument that his entertainment at social clubs and in his own home of business men and representatives of foreign governments with whom he transacted the government's business was ordinary and necessary expense within the contemplation of the statute. As we see it, the respondent as a government officer merely carried out in a personal way the social amenities to which he was accustomed in civilian life. This, in some quarters, has lately been termed "gracious living". We think the statute involved has not been more gracious to gracious livers than to others in government service.

■ We shall ñot pause to discuss the added contention of the taxpayer, which the tax court did not even consider, that he is entitled to his claimed deductions by reason of contributions or gifts to the United States within the coverage of section 23 (o) (1) of the Internal Revenue Code. In our thought, that code section has no relation whatever to the circumstances of this case.

■ The issue before us involves statutory construction and, therefore, an issue of law is presented, requiring us to review the tax court's interpretation of the statute. See Trust under the Will of Bingham v. Commissioner of Internal Revenue, 325 U. S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, 163 A. L.R. 1175; Lincoln Electric Co. v. Commissioner of Internal Revenue, 6 Cir., 162 F. 2d 379, 381; Commissioner of Internal Revenue v. McWilliams, 6 Cir., 158 F.2d 637, affirmed 331 U.S. 694, 67 S.Ct. 1477, 91 L.Ed. 1750, 170 A.L.R. 341; Rassenfoss v. Commissioner of Internal Revenue, 7 Cir., 158 F.2d 764, Commissioner of In-

ternal Revenue v. Josephs, 8 Cir., 168 F. 2d 233. The old case of Cohan v. Commissioner of Internal Revenue, 2 Cir., 39 F. 2d 540, cited by respondent, is not in point.

The tax court's conclusions are, in our judgment, clearly erroneous; and, accordingly, its decision is reversed with direction that the ruling of the Commissioner disallowing the claimed deductions be sustained.