CHARLES AND MARILYN A. GRUBBS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grubbs v. Commissioner
Docket No. 15051-88
United States Tax Court
T.C. Memo 1990-307; 1990 Tax Ct. Memo LEXIS 325; 59 T.C.M. (CCH) 933; T.C.M. (RIA) 90307; June 19, 1990, Filed *325 Decision will be entered under Rule 155. Charles Grubbs, pro se. Louis H. Hill, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' joint Federal income tax for calendar years 1984 and 1985 of $ 10,895.45 and $ 8,829.40, respectively. After concessions by both parties, the issues for decision are (1) whether petitioners are entitled to deduct $ 20,593.86 and $ 17,871.05 as employee business expenses for taxable years 1984 and 1985, respectively; and (2) whether petitioners are entitled to deduct an additional $ 3,063 interest in 1985 as claimed on their Schedule A. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, together with the attached exhibits, are incorporated herein. Petitioners resided in Upper Sandusky, Ohio, at the time they filed their petition in this case. During taxable years 1984 and 1985 petitioner Marilyn A. Grubbs was employed by the Westinghouse Electric Corporation, and petitioner Charles Grubbs was employed as a District Manager for the "Ohio Farmer." [1] Unless otherwise indicated, all references to petitioner refer to Charles *326 Grubbs. Schedule C Expenses
Petitioner's employment with "Ohio Farmer" required that he travel to various farms in Sandusky and other counties. Accordingly, he incurred numerous employee business expenses. On Schedules C for 1984 and 1985 petitioner reported (1) his main business activity as "District Manager," (2) the business name as "Harvest Insurance," and (3) the following income and deductions: TAXABLE YEAR 1984
INCOME
Gross receipts - Commissions     $ 42,067.17
LESS
DEDUCTIONS
(1) Car insurance      $ 1,060.00
(2) Business uniforms      1,421.00
(3) Insurance      60.00
(4) Interest on business      indebtedness               1,392.12
(5) Laundry and cleaning      1,031.16
(6) Office expense      108.32
(7) Taxes      108.00
(8) Travel and entertainment      4,691.66
(9) Utilities and telephone      900.00
(10) Misc.     a. Postage         434.60
b. Meals         3,418.01
c. Motels         2,987.24
d. Mileage         [2] 6,751.64
e. Business trip to         Austria               3,201.01
f. Tax return fee         67.00
TOTAL DEDUCTIONS         27,631.76
TOTAL NET PROFIT         $ 14,435.41
*327 TAXABLE YEAR 1985
INCOME
Gross receipts - Commissions     $ 32,053.71
LESS
DEDUCTIONS
(1) Commissions     $ 1,485.19
(2) Business uniforms     1,685.64
(3) Car insurance     556.00
(4) Laundry and cleaning     1,012.00
(5) Office expense     247.64
(6) Other interest (car)     1,073.06
(7) Postage     487.16
(8) Taxes - car     438.80
(9) Travel and entertainment     4,053.21
(10) Utilities and telephone    766.67
(11) Other:    a. Meals        3,116.48
b. Business trip (Hawaii)        1,238.00
c. Lodging        2,914.31
d. Mileage        [3] 6,848.64
e. Tax return fee        75.00
TOTAL DEDUCTIONS    25,997.80
TOTAL NET PROFIT    $ 6,055.91  Sometime after April 15, 1985, petitioners' son moved from Denver, Colorado, into petitioners' home storing numerous boxes in the garage where petitioners kept their tax records. Their son later moved out and, in the process of cleaning out the garage, petitioners' tax records, including those for the taxable years in issue, *328 were accidently discarded in the local garbage disposal landfill. Petitioners discovered that their tax records were missing and realized that they must have been taken to the landfill. Accordingly, petitioners went to the landfill in a desperate attempt to salvage as many records as possible. Although some records were salvaged, most were destroyed. Sometime before October 9, 1987, the Internal Revenue Service (IRS) audited petitioners' joint Federal income tax returns for taxable years 1984 and 1985. Petitioners were able to substantiate some of their Schedule C and Schedule A deductions by showing the auditor all the receipts/records they salvaged. However, on or about April 7, 1988, petitioner was involved in an automobile accident, whereupon most of the salvaged tax records were lost and/or destroyed. On March 21, 1988, respondent determined that $ 26,013.84 of the $ 27,631.76 employee business expenses petitioners claimed for 1984, and $ 23,382.53 of the $ 25,997.80 they claimed for 1985 were not ordinary and necessary business expenses, or were not expended for the purpose designated. Accordingly, they were disallowed as deductions. [4] *329 Petitioners concede that the following expenses are personal and therefore not deductible: (1)
1984 Trip to Austria
$ 3,201.01
(2)
1985 Trip to Hawaii
1,238.00 The parties agree that $ 5,419.98 and $ 5,511.48 of the "Automobile Expenses" claimed in 1984 and 1985, respectively, are deductible. Schedule A Interest Expense
During 1984 and 1985 petitioners had at least two of their six children attending college, university, or technical school. John Grubbs ("John") attended Ohio Northern University, while David Grubbs ("David") attended Bowling Green State University. Both John and David obtained student loans directly from the school, and personal loans from local banks which petitioners co-signed. Petitioners, rather than John and David, made the payments on the student and personal loans during the *330 years in issue. During 1984 and 1985 petitioners paid $ 701.80 and $ 327.36 in interest to General Motors Acceptance Corporation (GMAC). Petitioners claimed interest deductions on their 1984 and 1985 Schedules A (Itemized Deductions) as follows: 1984
1985
Home mortgage
$ 5,568.48 $ 6,795.97 Credit card
396.00 161.75
Other:  Associates    756.76 992.58
Commercial    749.62 153.23
GMAC    -0-  327.36
Huntington National Bank *    566.32 501.60
Ohio Northern    -0-  474.97
Bowling Green    -0-  1,183.26
Marion Tech. College    -0-  414.00
$ 8,037.18
$ 11,004.72
Respondent determined that for taxable year 1985 petitioners failed to substantiate that they actually paid more than $ 7,941.72 in interest and, therefore, disallowed $ 3,063. OPINION Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners bear the burden of proving their entitlement to the deductions claimed. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended, *331 and in effect for the taxable years in issue.
Schedule C Items
In order for petitioners to be allowed a business deduction (1) the expenses must be ordinary and necessary and incurred in their trade or business (sec. 162); and (2) petitioners must maintain records sufficient to substantiate the deductions claimed ( sec. 1.6001-1(a), Income Tax Regs.). See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Petitioner testified that all the tax records for 1984 and 1985 were destroyed (1) by being accidently thrown out, and (2) in his car accident. Accordingly, petitioners do not have any receipts to substantiate the disallowed Schedule C expense deductions. In general, when a taxpayer's records have been lost or destroyed through circumstances beyond the taxpayer's control, he is entitled to substantiate the deductions by reconstructing his expenditures through other credible evidence. Watson v. Commissioner, T.C. Memo. 1988-29. Although we are not required to do so, we may accept credible testimony of a taxpayer to substantiate deductions when no further documentation is available. a. Car Insurance: 1984 and 1985
Taxpayers are entitled *332 to claim a deduction for either actual expenses (gasoline, gasoline taxes, oil, repairs, license tags, and insurance) or fixed mileage, but not both. See Rev. Proc. 84-72, 1984-2 C.B. 735, as modified by Rev. Proc. 85-49, 1985-2 C.B. 716; Massey v. Commissioner, T.C. Memo. 1984-210. Therefore, since the parties agreed that $ 5,419.98 and $ 5,511.48 of the mileage expenses claimed in 1984 and 1985, respectively, are deductible, we find the insurance expenses nondeductible. b. Business Uniform/Laundry: 1984 and 1985
Although purchasing and wearing a business wardrobe may be a necessary condition of employment, the cost and maintenance of it has generally been considered a nondeductible personal expense. Sec. 262; Hynes v. Commissioner, 74 T.C. 1266, 1290 (1980). See Kennedy v. Commissioner, 451 F.2d 1023 (3d Cir 1971), affg. per curiam a Memorandum Opinion of this Court, cert denied 406 U.S. 920 (1972); Motch v. Commissioner, 11 T.C. 777 (1948), revd. on other issues 180 F.2d 859 (6th Cir. 1950). A deduction is not allowed for the cost and maintenance of business clothes when they are suitable for general wear. This is true even when the taxpayer shows that he would not have purchased *333 the clothes but for his employment. Stiner v. United States, 524 F.2d 640 (10th Cir. 1975); Donnelly v. Commissioner, 262 F.2d 411 (2d Cir. 1959), affg. 28 T.C. 1278 (1957); Hynes v. Commissioner, supra; Risicato v. Commissioner, T.C. Memo. 1984-238; Peacock v. Commissioner , T.C. Memo. 1978-30. We find that the cost of acquiring and maintaining the clothes are nondeductible personal expenses. [5] c. Interest on Business Indebtedness: 1984; Car Interest: 1985
Taxpayers are generally allowed a deduction of interest paid or incurred. Sec. 163; sec. 162. Here, however, we do not know whether this interest is the same interest that was allowed as a deduction on petitioners' Schedules A for 1984 and 1985. Without more, we are constrained to find for respondent on this item.
d. Travel (Meals and Lodging) and Entertainment: 1984 and 1985
Although travel and entertainment expenses are deductible under section 162, section 274 provides that no deduction is allowable unless the taxpayer establishes for *334 each item of travel expenses (including meals and lodging incidental to such travel) the amount, time, place, and business purpose. See sec. 1.2745(b)(2), Income Tax Regs. The elements in the case of entertainment expenses are amount, time, place, business purpose, and business relationship of the recipient. Sec. 274(d); sec. 1.274-5(b)(3), Income Tax Regs. Petitioner testified, and we believe, that he traveled extensively to various counties calling on clients or prospective clients, spent nights away from home, entertained clients, and so forth. Without more, however, the strict substantiation requirements of section 274 are not satisfied. There is, however, an exception to the normal substantiation requirements (see sec. 1.274-5(c)(5), Income Tax Regs.), which will apply if the taxpayer establishes that (1) he at one time possessed adequate records, and (2) his present lack of records is due to a casualty [6] *335 beyond his control. If these requirements are satisfied the taxpayer is relieved from satisfying the strict substantiation requirements, and is permitted to "reasonably reconstruct his expenditures." Gizzi v. Commissioner, 65 T.C. 342, 345 (1975). Here, we need not decide whether petitioners qualify under the exception, since even if they did, they failed to reasonably reconstruct their records. See, e.g., Seckel v. Commissioner, T.C. Memo. 1974-170 (records were burglarized; no effort at reconstruction); Blackburn v. Commissioner, T.C. Memo. 1973-254 (records lost in flood; no effort at reconstruction). Petitioners failed to provide us with any evidence from which we can determine whether the amounts were expended for business, rather than personal purposes. Accordingly, we hold for respondent on these items. e. Commissions
Commissions expenses are deductible under section 162(a). We believe petitioner's testimony that others "worked for him." However, we are not able to determine (1) whether the item "Commission expense" is properly classified, and (2) even if properly classified, whether the expense is an "ordinary and necessary" expense of petitioner. We do not know why petitioner, rather than Ohio Farmer, incurred these expenses, or if he was required to do so as part of his employment. We, *336 therefore, find for respondent on this item. Schedule A Interest
Section 163(a) provides that "there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." However, for petitioners to be allowed an interest deduction the interest must be on their own indebtedness, rather than on the indebtedness of another. See Southern Pacific Transportation Co. v. Commissioner, 75 T.C. 497, 565 (1980), and cases cited therein. Respondent allowed interest deductions of $ 7,941.72. We, however, are unable to determine which "items" of interest respondent allowed or disallowed, since respondent did not prepare an item by item schedule. Therefore, for guidance, we referred to the 1984 Schedule A where all interest claimed was allowed. After comparing the 1984 and 1985 Schedules A, we find petitioners are entitled to an additional $ 701.80 interest deduction in 1984 for the interest they paid to GMAC. This brings their total 1984 Schedule A interest deduction to $ 8,738.98. On their 1985 return, petitioners deducted approximately $ 2,573.83 in interest paid on the personal loans they cosigned [7] with their children, and the school loans made directly *337 to the children. Because we find petitioner's testimony credible, we accept as a fact that he cosigned a personal loan from Huntington National Bank. We also find petitioners paid $ 501.60 in interest to Huntington National Bank. [8] We, however, are unable to conclude that petitioners cosigned any other personal loans, or the loans received by John and David directly from Ohio Northern and Bowling Green. The direct school loan statements show the children, not petitioners, as the borrowers. Petitioners' names do not appear anywhere on the documentation. Accordingly, we conclude that petitioners, as joint obligors on the Huntington Bank loan, are entitled to deduct the $ 501.60 interest claimed in 1985. Cf. Rushing v. Commissioner , 58 T.C. 996 (1972). See Sparks Farm, Inc. v. Commissioner, T.C. Memo. 1988-492; Secunda v. Commissioner, T.C. Memo. 1977-185; *338 Rev. Rul. 71-179, 1971-1 C.B. 58. However, we find the interest petitioners paid on the loans from Ohio Northern, Bowling Green, and Marion College nondeductible, since there is no evidence that they were jointly liable. Moreover, we find petitioners are entitled to deduct an additional $ 489.17. This gives petitioners a total 1985 interest deduction of $ 8,932.49. [9] To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Although, the "Ohio Farmer" is a magazine, petitioner actually sells health insurance to the farmers. The magazine is used as a "door opener."↩
2. The $ 6,751.64 represents a total of 48,424 miles traveled, 15,000 at 20.5 cents per mile, and 33,424 at 11 cents per mile.↩
3. The $ 6,848.64 represents a total of 48,624 miles traveled, 15,000 at 21 cents per mile, and 33,624 at 11 cents per mile.↩
4. Respondent disallowed the following Schedule C expenses: ↩
1984
1985
1.
Automobile expenses $ 6,751.64 $ 6,848.64 2.
Insurance 1,120.00
556.00
3.
Meals and lodging 6,405.25
2,914.31
4.
Travel and entertainment 4,691.66
7,169.69
5.
Uniforms and maintenance 2,452.16
2,097.64
6.
Interest expense 1,392.12
1,073.06
7.
Commissions --   1,485.19
8.
Trip to Austria 3,201.01
--   9.
Trip to Hawaii --   1,238.00
TOTAL DISALLOWED $ 26,013.84
$ 23,382.53
*. Also known as Belle Fountaine National.↩
5. We note that respondent either intentionally or inadvertently allowed petitioners a $ 600 deduction for "Uniforms and maintenance." We hold respondent to this on the Rule 155 computation.↩
6. This includes flood, fire, earthquake, or other "casualty" over which the taxpayer has no control. See Gizzi v. Commissioner, 65 T.C. 342, 345↩ (1975).
7. Cosignatory is defined as joint signer, while cosigner is defined as a joint signer of a promissory note. Webster's Ninth New Collegiate Dictionary, 294 (1983).↩
8. Since we believe petitioner's testimony, coupled with the fact that a third party, tax return preparer, prepared both the 1984 and 1985 returns, we believe the interest deduction claimed was in fact paid.↩
9. This figure is comprised of the following: ↩
Home mortgage
$ 6,795.97
Credit card
161.75
Other:  Associates       992.58
Commercial       153.23
GMAC       327.36
Huntington Bank       501.60
$ 8,932.49